**FILED**

IN THE UNITED STATES DISTRICT COURT UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO ALBUQUERQUE, NEW MEXICO

APR 2 3 2010

FIREMAN'S FUND INSURANCE COMPANY
And ZURICH INSURANCE COMPANY, LTD
(as Subrogees to BOART LONGYEAR, Inc.)

**MATTHEW J. DYKMAN**
CLERK

Plaintiffs,

No. 10cv401 MV/LFG

v.

THYSSEN MINING CONSTRUCTION OF
CANADA, LTD., MUDJATIK THYSSEN MINING
JOINT VENTURE, COMINICO ENGINEERING
SERVICES, LTD and DOES 1 – 10 INCLUSIVE,

Defendants.

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(B)

PLEASE TAKE NOTICE that Defendant, Mudjatik Thyssen Mining Joint Venture

through their attorneys of record, Madison, Harbour & Mroz, P.A. by Ada B. Priest, hereby

files this Notice of Removal of the above-captioned action to the United States District

Court for the District of New Mexico from the Eighth Judicial District Court of Taos County,

New Mexico, where this action is now pending, pursuant to 28 U.S.C. Section 1441(B), and

states:

## NATURE OF ACTION AND SERVICE

1.    On or about December 21, 2009, Plaintiffs, Fireman's Fund Insurance

Company and Zurich Insurance Company, Ltd. (as subrogees of Boart Longyear, Inc. and

hereinafter collectively referred to as "Plaintiffs") commenced an action in the Eighth

Judicial District Court, County of Taos, State of New Mexico, Case No. CV-2009-635, against

Thyssen Mining Construction of Canada, Ltd., Mudjatik Thyssen Mining, Cominco

Engineering Services, Ltd. and Does 1-10, Inclusive. ***Attached hereto as Exh. A is the Complaint for Negligence.***

    2.     On or about January 7, 2010 Thyssen Mining Construction of Canada, Ltd. was served with process through its registered agent:  CT Corporation. ***Attached hereto as Exh. B is the Return of Service.***

    3.     On or about January 15, 2010, Plaintiffs herein filed a First Amended Complaint for Negligence. ***Attached hereto as Exh. C is the First Amended Complaint for Negligence.***

    4.     On or about March 4, 2010, Plaintiffs filed a Second Amended Complaint naming Thyssen Mining Construction of Canada, Ltd., Mudjatik Thyssen Mining Joint Venture (hereinafter collectively referred to as "MTM"), Cominco Engineering Services, Ltd. and Does 1-10, Inclusive.[1] ***Attached hereto as Exh. D is the Second Amended Complaint for Negligence.***

    5.     Plaintiffs' Second Amended Complaint seeks damages against all Defendants for damages allegedly sustained in connection with the flooding of a mine in Saskatchewan, Canada.

    6.     On April 15, 2010, an Acceptance of Service of Second Amended Summons and Second Amended Complaint was executed on behalf of Defendant Thyssen Mining Construction of Canada, Ltd. and Defendant Mudjatik Thyssen Mining Joint Venture, respectively. ***Attached hereto as Exhs. E and F are the Acceptance of Service, for both parties respectively.***

---

[1] An amended complaint was filed to include the correct name of the joint venture: *Mudjatik Thyssen Mining Joint Venture.*  No additional substantive changes were made.

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(B) - **Page 2**

7.    On or about April 22, 2010, Defendants Mudjatik Thyssen Mining Joint

Venture and Thyssen Mining construction of Canada, Lt., filed a Motion to Dismiss pursuant

to Rule 1-012 NMRA 2010.  **A copy of that Motion is attached hereto as Exhibit G.**  The

documents attached hereto constitute the records and proceedings from the state court

action in accordance with D.N.M.LR-Civ. 81.1(a) and 28 U.S.C. Section 1446(a).  Accordingly,

Mudjatik Thyssen Mining Joint Venture's time to answer or remove with respect to the

Second Amended Complaint has not expired.

8.    Pursuant to 28 U.S.C. Section 1446(b), this Notice of Removal, filed within

30 days of service of the complaint, is timely.

## DIVERSITY OF PROPER PARTIES

9.    Plaintiff Fireman's Fund Insurance Company , upon information and belief, is

a United States corporation with its principle place of business in a place other than New

Mexico.  (Second Amended Complaint at ¶1).

10.    Plaintiff Zurich Insurance Company, upon information and belief,  is a United

States corporation with its principle place of business in a place other than New Mexico.

(Second Amended Complaint at ¶2).

11.    For the purposes of determining diversity of citizenship and for purposes of

removal, "a corporation shall be deemed to be a citizen of any State by which it has been

incorporated and of the State where it has its principal place of business..."  28 U.S.C.

Section 1331(c)(1).

12.    Defendant Thyssen Mining Construction of Canada, Ltd. is a business

corporation formed pursuant to the laws of Saskatchewan, Canada which carries on

business in Saskatchewan as a mining contractor.  Thyssen Mining Construction of Canada, Ltd.'s registered head office is located in Saskatoon, Saskatchewan S7T 1C8[2].

13.     Complete diversity exists between Plaintiffs (United States corporations) and Defendant Thyssen Mining Construction of Canada, Ltd. (Canadian corporation).

14.     The Mudjatik Thyssen Mining Joint Venture was created to undertake mining contracting work in Northern Saskatchwan, Canada.

15.     Complete diversity exists between Plaintiffs (United States corporations) and Defendant Mudjatik Thyssen Mining Joint Venture (Canadian Joint Venture).

16.     Does are alleged to be agents and/or employees of the Defendants and to have been acting in the course and scope of their employment.  Pursuant to 28 U.S.C. §1441(a), the citizenship of defendants sued under fictitious names shall be disregarded.

17.     Defendant Cominco Engineering Services Ltd. is a Canadian corporation which carries on business as a provider of mining engineering services in Saskatchewan and elsewhere in Canada.  Cominco's registered head office is located at 200 Burrard Street, Suite 600, Vancouver, British Columbia, V6C3L9.

18.     Complete diversity exists between Plaintiffs (United States corporations) and Defendant Cominco Engineering Services, Ltd.  (Canadian corporation).

## **AMOUNT IN CONTROVERSY**

19.     The amount in controversy for removal jurisdiction normally is determined by reference to the allegations in the plaintiff's complaint. *Laughlin v. Kmart Corp.,* 50 F.3d

---

[2] Defendant Thyssen Mining Construction of Canada, Ltd. is registered to do business in New Mexico with its principle address identified as P.O. Box 1997 Regina, Saskatchewan S4P 3E1. Defendant Thyssen Mining Construction of Canada, Ltd.'s registered agent for service of process in New Mexico is CT Corporation System at 123 Marcy St., Santa Fe, New Mexico 87501.

871, 873 (10th Cir. 1995).   In their Complaint, Plaintiffs allege losses estimated at $3,766,000. (Second Amended Complaint at ¶ 13).

20.     Mudjatik Thyssen Mining Joint Venture denies the allegations in the Second Amended Complaint.  Taking those allegations on their face as true, however, as this Court must do for the purpose of determining the propriety of removal, it is clear that Plaintiffs' alleged compensatory damages demonstrate a controversy in excess of $75,000.00.

21.     Given the complete diversity of the real parties and an amount in controversy in excess of $75,000.00, this Court has jurisdiction over the causes of action and claims asserted in the State Court action pursuant to 28 U.S.C. Section 1332 and/or 1367, and this action is properly removable pursuant to 28 U.S.C. Section 1441.

## CONSENT AND NOTICE

22.     A return of service has not been filed for Cominco Engineering Services, Ltd., nor has any counsel made a formal or informal appearance on their behalf in this litigation. As such, consent on behalf of Cominco Engineering Services, Ltd. is not currently known.

23.     Defendant Thyssen Mining Construction of Canada, Ltd. consents to this Notice of Removal.

24.     Written notice of the filing of this removal of the above action pursuant to 28 U.S.C. Section 1446(d) is being delivered to all parties through their counsel.  A copy of this Notice of Removal will be promptly filed with the Clerk of the Court, Eighth Judicial District, State of New Mexico.

**WHEREFORE** the Defendant, Mudjatik Thyssen Mining Joint Venture, gives notice that the above-styled action, which was pending in the Eighth Judicial District, County of Taos, State of New Mexico, as Cause No. CV-2009-635, is removed to this Court.

Respectfully submitted,

MADISON, HARBOUR & MROZ, P.A.

By: _____

Ada B. Priest
Post Office Box 25467
Albuquerque, New Mexico 87125-5467
(505) 242-2177
*Attorneys for Defendants Thyssen Mining Construction of Canada, Ltd. and Mudjatik Thyssen Mining Joint Venture*

## Certificate of Service

It is hereby certified that I caused to be mailed on this 23rd day of April, 2010, a true and correct copy of the foregoing pleading to:

Harvey Fruman, Esq.
Cozen O'Connor
125 Lincoln Avenue, Ste. 400
Santa Fe, NM 87501

Ada B. Priest

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT

FILED IN MY OFFICE
8TH JUDICIAL DIST. COURT
TAOS COUNTY, NM NM

2009 DEC 21  PM 4: 22

SERNADE P. STRUCK
CLERK OF THE
DISTRICT COURT

FIREMAN'S FUND INSURANCE COMPANY
and ZURICH INSURANCE COMPANY LTD
(as subrogees of Boart Longyear Inc),

Plaintiffs,

v.

Case No. CV - 2009-635

THYSSEN MINING CONSTRUCTION OF
CANADA LTD, MUDJATIK THYSSEN
MINING, COMINCO ENGINEERING
SERVICES LTD, and DOES 1-10, Inclusive,

Defendants.

## COMPLAINT FOR NEGLIGENCE

### Preliminary Allegations

**I.    THE PARTIES**

1.    Plaintiff Fireman's  Fund Insurance Company (hereafter "Fireman's Fund") is and

has been a foreign corporation with its principal place of business in a State other than New

Mexico.  At all times relevant, Fireman's Fund has been lawfully authorized to conduct

insurance business in the State of New Mexico.

2.    Plaintiff Zurich Insurance Company Ltd (hereafter "Zurich") is and has been a

foreign corporation with its principal place of business in a State other than New Mexico.  At all

times relevant, Zurich has been lawfully authorized to conduct insurance business in the State of

New Mexico.

3.    Fireman's Fund and Zurich hereafter will collectively be known as "Plaintiffs."


EXHIBIT

A

4.      Defendant Thyssen Mining Construction of Canada Ltd. (hereinafter, "Thyssen"), is registered in New Mexico as a foreign profit corporation for the purpose of underground mining.  At all times relevant herein, Thyssen was doing business with the Chevron Mining, Inc. Questa Mine in Questa, Taos County, New Mexico.

5.      Defendant Thyssen has partnered with Mudjatik Enterprises Inc. in a joint venture referred to as Mudjatik Thyssen Mining, a Defendant herein. Thyssen is the managing partner of the joint venture, which was created to undertake mining contracting work   Thyssen, Mudjatik and their joint venture are hereinafter referred to collectively as "MTM."

6.      Defendant Cominco Engineering Services Ltd. (hereinafter, "Cominco") is a Canadian corporation which carries on business as a provider of mining engineering services.

7.      The true names and capacities of Defendants Does 1 – 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue said Defendants in their fictitious names.  Plaintiffs are informed and believe and thereon allege that each fictitiously named Defendant is legally responsible in some manner for the events and damages referred to herein as having been proximately caused by their conduct.  These Doe Defendants, and each of them, were the agents and/or employees of each remaining Defendant and were at all times acting within the purpose and scope of said agency and employment, and each Doe Defendant has ratified and approved the acts of its agents and employees.

II.     **BACKGROUND**

8.      In November of 2004, Boart Longyear Inc. contracted with Cameco Corporation (hereinafter, "Cameco") to provide drilling equipment and skilled labor at Cameco's uranium ore

mine located in Northern Saskatchewan, Canada (hereinafter, the "Mining Project" or the "Mine").

9.    In or about 1990, Cominco contracted with the Cigar Lake Mining Corporation, a predecessor of Cameco, to design, manufacture and install underground water control bulkhead doors in the Mine's east and west drift tunnels (hereinafter, the "Doors"). These Doors were a critical component of the Mine's operation in that they were the only major physical water control barrier in the event that there was a water inflow rate which exceeded the capacity of the water extraction equipment in a Mine tunnel.

10.    Cameco assumed operation of the Mining Project in 2002.  The underground drilling activities at the Mine were categorized into two groups:

A.    Excavation of underground tunnels created by drilling, blasting, and a mechanical tunneling system. MTM contracted with Cameco to perform this excavation work at the Mine; and

B.    Drilling for the extraction of uranium ore.  Boart Longyear contracted with Cameco in November 2004 to perform this ore extraction work.

## III.   THE MINE FLOOD ON OCTOBER 22, 2006

11.    On October 22, 2006, while MTM employees were in the process of excavating a Mine tunnel, a portion of the tunnel collapsed, accompanied by a large inflow of water that exceeded the capacity of the Mine's water extraction equipment. Although the employees were able to close one water control Door, a second water control Door could not be closed and sealed.  As a result, the Mine flooded and had to be closed.

12.     At the time of the Mine flood, Boart Longyear Inc. had drilling equipment located inside the Mine.

13.     As a result of the Mine flooding, Boart Longyear Inc. suffered the loss of its underground drilling equipment and sustained significant business interruption losses.  To date, Boart Longyear Inc.'s total losses are estimated at $3,766,000. The particulars of these losses will be provided at trial.

14.     At all times relevant herein, Plaintiffs had issued policies of insurance to Boart Longyear Inc.  These policies provided coverage, inter alia, for the above referenced property and business interest of the insured.

15.     As a result of the flood and loss of its equipment, Boart Longyear Inc. filed claims pursuant to its insurance policies.  Accordingly, Fireman's Fund paid Boart Longyear Inc. approximately $1,500,000 and Zurich paid Boart Longyear Inc. approximately $2,266,000 for a total of $3,766,000.00.

16.     The Plaintiffs are subrogated to the rights of Boart Longyear Inc. in the amounts of their policy payments to their insured.

## FIRST CAUSE OF ACTION

**(Negligence of MTM and of Thyssen as Managing Partner of MTM Joint Venture, and Does 1-5)**

17.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 16 as though fully set forth herein.

18.    The October 22, 2006 flooding of the Mine and the resulting losses sustained by Plaintiffs were a direct and proximate result of the negligence, carelessness, negligent errors and omissions and breach of duty of MTM, of Thyssen (as managing partner of MTM), and of Does 1-5, the particulars of which include, but are not limited to, the following:

A.    Failing to provide adequate manpower to ensure that they could carry out their contractual obligations at the Mine in a safe and timely manner;

B.    Failing to properly allocate their resources and schedule their activities at the Mine in a manner which would give priority to the safety of the property of others at the Mine;

C.    Failing to carry out their excavation work at the Mine with due care and in a good, safe and workmanlike manner;

D.    Failing to implement adequate precautions with respect to their Mine excavation activities;

E.    Failing to implement contingency plans in the event of a water inflow emergency at the Mine;

F.    Failing to identify detailed flood risk scenarios or ensure that necessary controls were in place to prevent the flooding that caused this loss and damages to Boart Longyear Inc.;

G.    Failing to ensure that ground supports were in place in the Mine in a safe and timely manner;

H.     Failing to timely install ground supports in the Mine;

I.     Failing to ensure that cable bolts, or equivalent ground control mechanisms, were used in all development tunnel intersections at the Mine;

J.     Failing to install adequate and safe ground support in a reasonable and timely manner at the Mine;

K.     Failing to use appropriate drilling techniques to excavate the tunnel which flooded;

L.     Failing to use controlled blasting techniques to excavate the tunnel which flooded;

M.     Failing to adhere to design and engineering specifications with respect to the excavation of the tunnel which flooded;

N.     Failing to maintain their excavation equipment in a good and workmanlike manner;

O.     Failing to ensure that Mine geological mapping had been implemented prior to excavating of the tunnel which flooded, and failing to ensure that adequate emergency water treatment and pumping systems were in place prior to excavating the tunnel which flooded;

P.     Failing to close the second Door in dry conditions as specified by the Door design specifications;

Q.      Failing to respond to the October 22, 2006 water inflow event at the Mine in a reasonable, safe and timely manner;

R.      Employing employees, agents, servants and contractors who lacked the necessary and adequate knowledge and training for their work at the Mine; and

S.      Failing to warn Boart Longyear Inc. of the increased risks created by the negligent provision of their mining excavating services.

19.     As a result, it was foreseeable to MTM that a flood could occur at the Mine which could result in damage and consequential losses to other contractors at the Mine, including Boart Longyear Inc., subrogor to Plaintiffs.

20.     Additionally, MTM and Thyssen, as managing partner of MTM, and Does 1-5, knew, or should have known, about the unreasonable risk of flooding created by the provision of their mining services and, in particular, by the excavation of the tunnel which flooded.

21.     As a result of the aforesaid conduct of these Defendants, and each of them, the flood occurred in the Mine on October 22, 2006 and caused significant loss and damage to Plaintiffs, as subrogees of Boart Longyear Inc.

## SECOND CAUSE OF ACTION

### (Negligence of Cominco and Does 6-10)

22.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 21 as though fully set forth herein.

7

23.     The Doors which had been designed, manufactured and installed in the Mine by Cominco and Does 6-10 were dangerous and defective products that were not of merchantable quality, nor were they fit for their purpose as a major physical control of water inflow into the Mine in the event of an emergency flooding. In particular:

A.     The weight of the Doors made them very difficult to align by hand while they were being closed;

B.     The Doors would not seal effectively unless they were properly aligned, but they did not contain a mechanism for performing that alignment;

C.     The Doors' gaskets, which were intended to form a watertight seal when the Doors were closed, were prone to failure and prone to detaching; and

D.     While the Doors were intended to prevent flooding of the Mine, their design by these Defendants was defective in that, among other things, electrical power to water pumps needed to be disconnected before the Doors could be closed. Thus, there was no means of keeping water levels down once water reached the Doors.

24.     The flooding of the Mine and the resulting losses sustained by Plaintiffs' insured were a direct and proximate result of the negligence, carelessness, negligent errors and omissions and breach of duty of Cominco and Does 6-10, and each of them, the particulars of which include, but are not limited to, the following:

A.     These Defendants failed to design, manufacture and install the Mine Doors in a good and workmanlike manner;

B.     These Defendants failed to design, manufacture and install Mine Doors that were safe, fit for their purpose, of merchantable quality, and free of design defects;

C.     These Defendants failed to provide appropriate warnings, instructions and training with respect to the effective use and operation of the Mine Doors.

25.     As a result, it was foreseeable to MTM that a flood could occur at the Mine which could result in damage and consequential losses to other contractors at the Mine, including Boart Longyear Inc., subrogor to Plaintiffs.

## DAMAGES

26.     As a result of the foregoing breaches of the legal obligations owed by the Defendants, Plaintiffs plead that the Defendants are jointly and severally liable for all damages that they paid to Boart Longyear Inc. as a result of the Mine flooding, including damage to Boart Longyear Inc.'s underground excavation equipment and its business interruption losses, all of which are currently estimated to be in excess of $3,766,000, the particulars of which will be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.     For the total amount of the actual damages alleged herein;

2.     For costs of suit and attorneys' fees as permitted by law;

3.     For pre- and post-judgment interest as permitted by law; and

4.     For such other and further relief as the Court may deem just and proper.

Dated: _____

COZEN O'CONNOR

By: _*Harvey Fruman*_
    HARVEY FROMAN
    New Mexico State Bar No. 875
    125 Lincoln Avenue
    Suite 400
    Santa Fe, NM 87501
    (505) 820-3346

    and

By Tom Dunford _____
    THOMAS DUNFORD
    New Mexico State Bar No. 132548
    707 17TH Street, Suite 3100
    Denver, CO 80202
    (720) 479-3910

    Attorneys for Plaintiffs
    FIREMAN'S FUND INSURANCE
    COMPANY and ZURICH INSURANCE
    COMPANY LTD

10

 **CT Corporation**

**Service of Process Transmittal**
01/05/2010
CT Log Number 515957755

**TO:**  Jim Haines
Thyssen Mining Construction of Canada Ltd.
2409 Albert Street N., P. O. Box 1997
Regina, SK S4P3E1

**RE:**  **Process Served in New Mexico**

**FOR:**  Thyssen Mining Construction of Canada Ltd. (Domestic State: SK)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Fireman's Fund Insurance Company and Zurich Insurance Company Ltd, etc., Pltfs. vs. Thyssen Mining Construction of Canada Ltd, et al., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Letter, Complaint, Summons, Return Form, Attachment, Acceptance Form |
| **COURT/AGENCY:** | Eighth Judicial District Court, Taos County, NM Case # CV-2009-635 |
| **NATURE OF ACTION:** | Breach of Duty - Complaint in Subrogation - Seeking reimbursement for losses incurred as a result of a mine flood on 10/22/06 in Northern Saskatchewan, Canada |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Santa Fe, NM |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 01/05/2010 postmarked on 12/29/2009 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Harvey Fruman, Esq. Cozen O'Connor 125 Lincoln Avenue Suite 400 Santa Fe, NM 87501 505-820-3346 |
| **REMARKS:** | Enclosed is an Acceptance of Service of Summons and Complaint Form for your consideration. Please be aware CT Corporation does not sign on behalf of your company |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex International Economy , 799439089640 |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 123 East Marcy Street Santa Fe, NM 87501 |
| **TELEPHONE:** | 505-983-9122 |


TMCC
RECEIVED
JAN 0 7 2010
REGINA, SASK.

Page 1 of  1 / LM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents..

**EXHIBIT**

tabbies®  **B**

COPY

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT

FIREMAN'S FUND INSURANCE COMPANY
and ZURICH INSURANCE COMPANY LTD
(as subrogees of Boart Longyear Inc),

Plaintiffs,

v.                                                    Case No. CV-2009-635

THYSSEN MINING CONSTRUCTION OF
CANADA LTD, MUDJATIK THYSSEN
CIGAR LAKE JOINT VENTURE, COMINCO
ENGINEERING SERVICES LTD, and
DOES 1-10, Inclusive,

Defendants.

**FIRST AMENDED
COMPLAINT FOR NEGLIGENCE**

**Preliminary Allegations**

**I.      THE PARTIES**

1.      Plaintiff Fireman's Fund Insurance Company (hereafter "Fireman's Fund") is and

has been a foreign corporation with its principal place of business in a State other than New

Mexico.  At all times relevant, Fireman's Fund has been lawfully authorized to conduct

insurance business in the State of New Mexico.

2.      Plaintiff Zurich Insurance Company Ltd (hereafter "Zurich") is and has been a

foreign corporation with its principal place of business in a State other than New Mexico.  At all

times relevant, Zurich has been lawfully authorized to conduct insurance business in the State of

New Mexico.



**EXHIBIT**

**C**

3.      Fireman's Fund and Zurich hereafter will collectively be known as "Plaintiffs."

4.      Defendant Thyssen Mining Construction of Canada Ltd. (hereinafter, "Thyssen"), is registered in New Mexico as a foreign profit corporation for the purpose of underground mining.  At all times relevant herein, Thyssen was doing business with the Chevron Mining, Inc. Questa Mine in Questa, Taos County, New Mexico.

5.      Defendant Thyssen has partnered with Mudjatik Enterprises Inc. in a joint venture referred to as Mudjatik Thyssen Cigar Lake Joint Venture, a Defendant herein. Thyssen is the managing partner of the joint venture, which was created to undertake mining contracting work Thyssen, Mudjatik  and their joint venture are hereinafter referred to collectively as "MTM."

6.      Defendant Cominco Engineering Services Ltd. (hereinafter, "Cominco") is a Canadian corporation which carries on business as a provider of mining engineering services.

7.      The true names and capacities of Defendants Does 1 – 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue said Defendants in their fictitious names.  Plaintiffs are informed and believe and thereon allege that each fictitiously named Defendant is legally responsible in some manner for the events and damages referred to herein as having been proximately caused by their conduct.  These Doe Defendants, and each of them, were the agents and/or employees of each remaining Defendant and were at all times acting within the purpose and scope of said agency and employment, and each Doe Defendant has ratified and approved the acts of its agents and employees.

2

## II.    BACKGROUND

8.      In November of 2004, Boart Longyear Inc. contracted with Cameco Corporation (hereinafter, "Cameco") to provide drilling equipment and skilled labor at Cameco's uranium ore mine located in Northern Saskatchewan, Canada (hereinafter, the "Mining Project" or the "Mine").

9.      In or about 1990, Cominco contracted with the Cigar Lake Mining Corporation, a predecessor of Cameco, to design, manufacture and install underground water control bulkhead doors in the Mine's east and west drift tunnels (hereinafter, the "Doors"). These Doors were a critical component of the Mine's operation in that they were the only major physical water control barrier in the event that there was a water inflow rate which exceeded the capacity of the water extraction equipment in a Mine tunnel.

10.     Cameco assumed operation of the Mining Project in 2002.  The underground drilling activities at the Mine were categorized into two groups:

A.      Excavation of underground tunnels created by drilling, blasting, and a mechanical tunneling system. MTM contracted with Cameco to perform this excavation work at the Mine; and

B.      Drilling for the extraction of uranium ore.  Boart Longyear contracted with Cameco in November 2004 to perform this ore extraction work.

## III.   THE MINE FLOOD ON OCTOBER 22, 2006

11.     On October 22, 2006, while MTM employees were in the process of excavating a Mine tunnel, a portion of the tunnel collapsed, accompanied by a large inflow of water that

exceeded the capacity of the Mine's water extraction equipment. Although the employees were able to close one water control Door, a second water control Door could not be closed and sealed. As a result, the Mine flooded and had to be closed.

12.    At the time of the Mine flood, Boart Longyear Inc. had drilling equipment located inside the Mine.

13.    As a result of the Mine flooding, Boart Longyear Inc. suffered the loss of its underground drilling equipment and sustained significant business interruption losses. To date, Boart Longyear Inc.'s total losses are estimated at $3,766,000. The particulars of these losses will be provided at trial.

14.    At all times relevant herein, Plaintiffs had issued policies of insurance to Boart Longyear Inc. These policies provided coverage, inter alia, for the above referenced property and business interest of the insured.

15.    As a result of the flood and loss of its equipment, Boart Longyear Inc. filed claims pursuant to its insurance policies. Accordingly, Fireman's Fund paid Boart Longyear Inc. approximately $1,500,000 and Zurich paid Boart Longyear Inc. approximately $2,266,000 for a total of $3,766,000.00.

16.    The Plaintiffs are subrogated to the rights of Boart Longyear Inc. in the amounts of their policy payments to their insured.

## FIRST CAUSE OF ACTION

**(Negligence of MTM and of Thyssen as Managing Partner of MTM Joint Venture, and Does 1-5)**

4

17.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 16 as though fully set forth herein.

18.     The October 22, 2006 flooding of the Mine and the resulting losses sustained by Plaintiffs were a direct and proximate result of the negligence, carelessness, negligent errors and omissions and breach of duty of MTM, of Thyssen (as managing partner of MTM), and of Does 1-5, the particulars of which include, but are not limited to, the following:

A.     Failing to provide adequate manpower to ensure that they could carry out their contractual obligations at the Mine in a safe and timely manner;

B.     Failing to properly allocate their resources and schedule their activities at the Mine in a manner which would give priority to the safety of the property of others at the Mine;

C.     Failing to carry out their excavation work at the Mine with due care and in a good, safe and workmanlike manner;

D.     Failing to implement adequate precautions with respect to their Mine excavation activities;

E.     Failing to implement contingency plans in the event of a water inflow emergency at the Mine;

F.     Failing to identify detailed flood risk scenarios or ensure that necessary controls were in place to prevent the flooding that caused this loss and damages to Boart Longyear Inc.;

G.     Failing to ensure that ground supports were in place in the Mine in a safe and timely manner;

H.     Failing to timely install ground supports in the Mine;

I.     Failing to ensure that cable bolts, or equivalent ground control mechanisms, were used in all development tunnel intersections at the Mine;

J.     Failing to install adequate and safe ground support in a reasonable and timely manner at the Mine;

K.     Failing to use appropriate drilling techniques to excavate the tunnel which flooded;

L.     Failing to use controlled blasting techniques to excavate the tunnel which flooded;

M.     Failing to adhere to design and engineering specifications with respect to the excavation of the tunnel which flooded;

N.     Failing to maintain their excavation equipment in a good and workmanlike manner;

O.     Failing to ensure that Mine geological mapping had been implemented prior to excavating of the tunnel which flooded, and failing to ensure that adequate emergency water treatment and pumping systems were in place prior to excavating the tunnel which flooded;

6

P.    Failing to close the second Door in dry conditions as specified by the Door design specifications;

Q.    Failing to respond to the October 22, 2006 water inflow event at the Mine in a reasonable, safe and timely manner;

R.    Employing employees, agents, servants and contractors who lacked the necessary and adequate knowledge and training for their work at the Mine; and

S.    Failing to warn Boart Longyear Inc. of the increased risks created by the negligent provision of their mining excavating services.

19.    As a result, it was foreseeable to MTM that a flood could occur at the Mine which could result in damage and consequential losses to other contractors at the Mine, including Boart Longyear Inc., subrogor to Plaintiffs.

20.    Additionally, MTM and Thyssen, as managing partner of MTM, and Does 1-5, knew, or should have known, about the unreasonable risk of flooding created by the provision of their mining services and, in particular, by the excavation of the tunnel which flooded.

21.    As a result of the aforesaid conduct of these Defendants, and each of them, the flood occurred in the Mine on October 22, 2006 and caused significant loss and damage to Plaintiffs, as subrogees of Boart Longyear Inc.

**SECOND CAUSE OF ACTION**

**(Negligence of Cominco and Does 6-10)**

7

22.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 21 as though fully set forth herein.

23.    The Doors which had been designed, manufactured and installed in the Mine by Cominco and Does 6-10 were dangerous and defective products that were not of merchantable quality, nor were they fit for their purpose as a major physical control of water inflow into the Mine in the event of an emergency  flooding. In particular:

A.    The weight of the Doors made them very difficult to align by hand while they were being closed;

B.    The Doors would not seal effectively unless they were properly aligned, but they did not contain a mechanism for performing that alignment;

C.    The Doors' gaskets, which were intended to form a watertight seal when the Doors were closed, were prone to failure and prone to detaching; and

D.    While the Doors were intended to prevent flooding of the Mine, their design by these Defendants was defective in that, among other things, electrical power to water pumps needed to be disconnected before the Doors could be closed.  Thus, there was no means of keeping water levels down once water reached the Doors.

24.    The flooding of the Mine and the resulting losses sustained by Plaintiffs' insured were a direct and proximate result of the negligence, carelessness, negligent errors and omissions and breach of duty of Cominco and Does 6-10, and each of them, the particulars of which include, but are not limited to, the following:

A.      These Defendants failed to design, manufacture and install the Mine Doors in a good and workmanlike manner;

B.      These Defendants failed to design, manufacture and install Mine Doors that were safe, fit for their purpose, of merchantable quality, and free of design defects;

C.      These Defendants failed to provide appropriate warnings, instructions and training with respect to the effective use and operation of the Mine Doors.

25.      As a result, it was foreseeable to MTM that a flood could occur at the Mine which could result in damage and consequential losses to other contractors at the Mine, including Boart Longyear Inc., subrogor to Plaintiffs.

## DAMAGES

26.      As a result of the foregoing breaches of the legal obligations owed by the Defendants, Plaintiffs plead that the Defendants are jointly and severally liable for all damages that they paid to Boart Longyear Inc. as a result of the Mine flooding, including damage to Boart Longyear Inc.'s underground excavation equipment and its business interruption losses, all of which are currently estimated to be in excess of $3,766,000, the particulars of which will be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.      For the total amount of the actual damages alleged herein;

2.      For costs of suit and attorneys' fees as permitted by law;

3.      For pre- and post-judgment interest as permitted by law; and

4.      For such other and further relief as the Court may deem just and proper.

Dated: *January 22, 2010*                   COZEN O'CONNOR

                                            By:   *Harvey Froman*
                                                  HARVEY FROMAN
                                                  New Mexico State Bar No. 875
                                                  125 Lincoln Avenue
                                                  Suite 400
                                                  Santa Fe, NM 87501
                                                  (505) 820-3346

                                                  and

                                            By  Tom Dunford
                                                  THOMAS DUNFORD
                                                  New Mexico State Bar No. 132548
                                                  707 17TH Street, Suite 3100
                                                  Denver, CO 80202
                                                  (720) 479-3910

                                                  Attorneys for Plaintiffs
                                                  FIREMAN'S FUND INSURANCE
                                                  COMPANY and ZURICH INSURANCE
                                                  COMPANY LTD

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT

FILED IN MY OFFICE
8 TH JUDICIAL DIST. COURT
TAOS DIVISION ON

2010 MAR -4  PM 2: 59

CLERK OF THE
DISTRICT COURT

FIREMAN'S FUND INSURANCE COMPANY
and ZURICH INSURANCE COMPANY LTD
(as subrogees of Boart Longyear Inc),

                                    Plaintiffs,

                    v.                                          Case No. CV-2009-635

THYSSEN MINING CONSTRUCTION OF
CANADA LTD; MUDJATIK THYSSEN
MINING JOINT VENTURE; COMINCO
ENGINEERING SERVICES LTD, and
DOES 1-10, Inclusive,

                                    Defendants.

## SECOND AMENDED
## COMPLAINT FOR NEGLIGENCE

### Preliminary Allegations

**I.     THE PARTIES**

1.     Plaintiff Fireman's  Fund Insurance Company (hereafter "Fireman's Fund") is and

has been a foreign corporation with its principal place of business in a State other than New

Mexico.  At all times relevant, Fireman's Fund has been lawfully authorized to conduct

insurance business in the State of New Mexico.

2.     Plaintiff Zurich Insurance Company Ltd (hereafter "Zurich") is and has been a

foreign corporation with its principal place of business in a State other than New Mexico.  At all

times relevant, Zurich has been lawfully authorized to conduct insurance business in the State of

New Mexico.



RECEIVED

MAR - 8 2010

MADIS
&

**EXHIBIT**

**D**

3.      Fireman's Fund and Zurich hereafter will collectively be known as "Plaintiffs."

4.      Defendant Thyssen Mining Construction of Canada Ltd. (hereinafter, "Thyssen"), is registered in New Mexico as a foreign profit corporation for the purpose of underground mining.  At all times relevant herein, Thyssen was doing business with the Chevron Mining, Inc. Questa Mine in Questa, Taos County, New Mexico.

5.      Defendant Thyssen has partnered with Mudjatik Enterprises Inc. in a joint venture referred to as Mudjatik Thyssen Mining Joint Venture (also known as Mudjatik Thyssen Cigar Lake Joint Venture), a Defendant herein. Thyssen is the managing partner of the joint venture, which was created to undertake mining contracting work.  Thyssen, Mudjatik  and their joint venture are hereinafter referred to collectively as "MTM."

6.      Defendant Cominco Engineering Services Ltd. (hereinafter, "Cominco") is a Canadian corporation which carries on business as a provider of mining engineering services.

7.      The true names and capacities of Defendants Does 1 – 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue said Defendants in their fictitious names.  Plaintiffs are informed and believe and thereon allege that each fictitiously named Defendant is legally responsible in some manner for the events and damages referred to herein as having been proximately caused by their conduct.  These Doe Defendants, and each of them, were the agents and/or employees of each remaining Defendant and were at all times acting within the purpose and scope of said agency and employment, and each Doe Defendant has ratified and approved the acts of its agents and employees.

2

## II.    BACKGROUND

8.    In November of 2004, Boart Longyear Inc. contracted with Cameco Corporation (hereinafter, "Cameco") to provide drilling equipment and skilled labor at Cameco's uranium ore mine located in Northern Saskatchewan, Canada (hereinafter, the "Mining Project" or the "Mine").

9.    In or about 1990, Cominco contracted with the Cigar Lake Mining Corporation, a predecessor of Cameco, to design, manufacture and install underground water control bulkhead doors in the Mine's east and west drift tunnels (hereinafter, the "Doors"). These Doors were a critical component of the Mine's operation in that they were the only major physical water control barrier in the event that there was a water inflow rate which exceeded the capacity of the water extraction equipment in a Mine tunnel.

10.    Cameco assumed operation of the Mining Project in 2002.  The underground drilling activities at the Mine were categorized into two groups:

A.    Excavation of underground tunnels created by drilling, blasting, and a mechanical tunneling system. MTM contracted with Cameco to perform this excavation work at the Mine; and

B.    Drilling for the extraction of uranium ore.  Boart Longyear contracted with Cameco in November 2004 to perform this ore extraction work.

3

## III.    THE MINE FLOOD ON OCTOBER 22, 2006

11.    On October 22, 2006, while MTM employees were in the process of excavating a Mine tunnel, a portion of the tunnel collapsed, accompanied by a large inflow of water that exceeded the capacity of the Mine's water extraction equipment. Although the employees were able to close one water control Door, a second water control Door could not be closed and sealed.  As a result, the Mine flooded and had to be closed.

12.    At the time of the Mine flood, Boart Longyear Inc. had drilling equipment located inside the Mine.

13.    As a result of the Mine flooding, Boart Longyear Inc. suffered the loss of its underground drilling equipment and sustained significant business interruption losses.  To date, Boart Longyear Inc.'s total losses are estimated at $3,766,000. The particulars of these losses will be provided at trial.

14.    At all times relevant herein, Plaintiffs had issued policies of insurance to Boart Longyear Inc.  These policies provided coverage, inter alia, for the above referenced property and business interest of the insured.

15.    As a result of the flood and loss of its equipment, Boart Longyear Inc. filed claims pursuant to its insurance policies.  Accordingly, Fireman's Fund paid Boart Longyear Inc. approximately $1,500,000 and Zurich paid Boart Longyear Inc. approximately $2,266,000 for a total of $3,766,000.00.

4

16.     The Plaintiffs are subrogated to the rights of Boart Longyear Inc. in the amounts of their policy payments to their insured.

## FIRST CAUSE OF ACTION

### (Negligence of MTM and of Thyssen as Managing Partner of MTM Joint Venture,  and Does 1-5)

17.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 16 as though fully set forth herein.

18.     The October 22, 2006 flooding of the Mine and the resulting losses sustained by Plaintiffs were a direct and proximate result of the negligence, carelessness, negligent errors and omissions and breach of duty of MTM, of Thyssen (as managing partner of MTM), and of Does 1-5, the particulars of which include, but are not limited to, the following:

A.     Failing to provide adequate manpower to ensure that they could carry out their contractual obligations at the Mine in a safe and timely manner;

B.     Failing to properly allocate their resources and schedule their activities at the Mine in a manner which would give priority to the safety of the property of others at the Mine;

C.     Failing to carry out their excavation work at the Mine with due care and in a good, safe and workmanlike manner;

D.     Failing to implement adequate precautions with respect to their Mine excavation activities;

E.      Failing to implement contingency plans in the event of a water inflow emergency at the Mine;

F.      Failing to identify detailed flood risk scenarios or ensure that necessary controls were in place to prevent the flooding that caused this loss and damages to Boart Longyear Inc.;

G.      Failing to ensure that ground supports were in place in the Mine in a safe and timely manner;

H.      Failing to timely install ground supports in the Mine;

I.      Failing to ensure that cable bolts, or equivalent ground control mechanisms, were used in all development tunnel intersections at the Mine;

J.      Failing to install adequate and safe ground support in a reasonable and timely manner at the Mine;

K.      Failing to use appropriate drilling techniques to excavate the tunnel which flooded;

L.      Failing to use controlled blasting techniques to excavate the tunnel which flooded;

M.      Failing to adhere to design and engineering specifications with respect to the excavation of the tunnel which flooded;

N.      Failing to maintain their excavation equipment in a good and workmanlike manner;

6

O.     Failing to ensure that Mine geological mapping had been implemented prior to excavating of the tunnel which flooded, and failing to ensure that adequate emergency water treatment and pumping systems were in place prior to excavating the tunnel which flooded;

P.     Failing to close the second Door in dry conditions as specified by the Door design specifications;

Q.     Failing to respond to the October 22, 2006 water inflow event at the Mine in a reasonable, safe and timely manner;

R.     Employing employees, agents, servants and contractors who lacked the necessary and adequate knowledge and training for their work at the Mine; and

S.     Failing to warn Boart Longyear Inc. of the increased risks created by the negligent provision of their mining excavating services.

19.     As a result, it was foreseeable to MTM that a flood could occur at the Mine which could result in damage and consequential losses to other contractors at the Mine, including Boart Longyear Inc., subrogor to Plaintiffs.

20.     Additionally, MTM and Thyssen, as managing partner of MTM, and Does 1-5, knew, or should have known, about the unreasonable risk of flooding created by the provision of their mining services and, in particular, by the excavation of the tunnel which flooded.

7

21.     As a result of the aforesaid conduct of these Defendants, and each of them, the flood occurred in the Mine on October 22, 2006 and caused significant loss and damage to Plaintiffs, as subrogees of Boart Longyear Inc.

## SECOND CAUSE OF ACTION

### (Negligence of Cominco and Does 6-10)

22.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 21 as though fully set forth herein.

23.     The Doors which had been designed, manufactured and installed in the Mine by Cominco and Does 6-10 were dangerous and defective products that were not of merchantable quality, nor were they fit for their purpose as a major physical control of water inflow into the Mine in the event of an emergency flooding. In particular:

A.     The weight of the Doors made them very difficult to align by hand while they were being closed;

B.     The Doors would not seal effectively unless they were properly aligned, but they did not contain a mechanism for performing that alignment;

C.     The Doors' gaskets, which were intended to form a watertight seal when the Doors were closed, were prone to failure and prone to detaching; and

D.     While the Doors were intended to prevent flooding of the Mine, their design by these Defendants was defective in that, among other things, electrical power to water pumps needed to be disconnected before the Doors could be closed.  Thus, there was no means of keeping water levels down once water reached the Doors.

8

24.     The flooding of the Mine and the resulting losses sustained by Plaintiffs' insured were a direct and proximate result of the negligence, carelessness, negligent errors and omissions and breach of duty of Cominco and Does 6-10, and each of them, the particulars of which include, but are not limited to, the following:

A.     These Defendants failed to design, manufacture and install the Mine Doors in a good and workmanlike manner;

B.     These Defendants failed to design, manufacture and install Mine Doors that were safe, fit for their purpose, of merchantable quality, and free of design defects;

C.     These Defendants failed to provide appropriate warnings, instructions and training with respect to the effective use and operation of the Mine Doors.

25.     As a result, it was foreseeable to MTM that a flood could occur at the Mine which could result in damage and consequential losses to other contractors at the Mine, including Boart Longyear Inc., subrogor to Plaintiffs.

## DAMAGES

26.     As a result of the foregoing breaches of the legal obligations owed by the Defendants, Plaintiffs plead that the Defendants are jointly and severally liable for all damages that Plaintiffs paid to Boart Longyear Inc. as a result of the Mine flooding, including damage to Boart Longyear Inc.'s underground excavation equipment and its business interruption losses, all of which are currently estimated to be in excess of $3,766,000, the particulars of which will be proven at trial.

9

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, jointly and severally, as follows:

1.   For the total amount of the actual damages alleged herein;

2.   For costs of suit and attorneys' fees as permitted by law;

3.   For pre- and post-judgment interest as permitted by law; and

4.   For such other and further relief as the Court may deem just and proper.


Dated: *March 2, 2010*

COZEN O'CONNOR

By: *Harvey Fruman*

HARVEY FRUMAN
New Mexico State Bar No. 875
125 Lincoln Avenue
Suite 400
Santa Fe, NM 87501
(505) 820-3346

and

By  Tom Dunford
THOMAS DUNFORD
New Mexico State Bar No. 132548
707 17TH Street, Suite 3100
Denver, CO 80202
(720) 479-3910

Attorneys for Plaintiffs
**FIREMAN'S FUND INSURANCE
COMPANY and ZURICH INSURANCE
COMPANY LTD**

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT


FIREMAN'S FUND INSURANCE COMPANY
and ZURICH INSURANCE COMPANY LTD
(as subrogees of Boart Longyear Inc),

                    Plaintiffs,

                    v.                              Case No. CV-2009-635

THYSSEN MINING CONSTRUCTION OF
CANADA LTD; MUDJATIK THYSSEN
MINING JOINT VENTURE; COMINCO
ENGINEERING SERVICES LTD, and
DOES 1-10, Inclusive,

                    Defendants.

## ACCEPTANCE OF SERVICE OF
## SECOND AMENDED SUMMONS AND SECOND AMENDED COMPLAINT

I, Ada B. Priest, counsel for Thyssen Mining Construction of Canada Ltd, Defendant in

this matter, hereby accepts service of the Second Amended Summons and Second Amended

Complaint on behalf of said Defendant.


Dated: April 15, 2010                        _____
                                             Ada B. Priest, Esq.
                                             **Madison, Harbour & Mroz, P.A.**
                                             201 Third Street, NW, Suite 1600
                                             Albuquerque, NM 87102
                                             (505) 242-2177
                                             (505) 242-7184  (fax)


EXHIBIT
tabbies

E

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT


FIREMAN'S FUND INSURANCE COMPANY
and ZURICH INSURANCE COMPANY LTD
(as subrogees of Boart Longyear Inc),

Plaintiffs,

v.                                    Case No. CV-2009-635

THYSSEN MINING CONSTRUCTION OF
CANADA LTD; MUDJATIK THYSSEN
MINING JOINT VENTURE; COMINCO
ENGINEERING SERVICES LTD, and
DOES 1-10, Inclusive,

Defendants.

**ACCEPTANCE OF SERVICE OF**
**SECOND AMENDED SUMMONS AND SECOND AMENDED COMPLAINT**

I, Ada B. Priest, counsel for Mudjatik Thyssen Mining Joint Venture, Defendant in this

matter, hereby accepts service of the Second Amended Summons and Second Amended

Complaint on behalf of said Defendant.


Dated: _April 15, 2010_

Ada B. Priest, Esq.
**Madison, Harbour & Mroz, P.A.**
201 Third Street, NW, Suite 1600
Albuquerque, NM 87102
(505) 242-2177
(505) 242-7184  (fax)

**EXHIBIT**

**F**

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT

FIREMAN'S FUND INSURANCE COMPANY
And ZURICH INSURANCE COMPANY LTD
(as subrogees of Boart Longyear Inc),

                 Plaintiffs

v.                                        **Case No. CV-2009-635**

THYSSEN MINING CONSTRUCTION OF
CANADA LTD, MUDJATIK THYSSEN MINING
JOINT VENTURE, COMINICO ENGINEERING
SERVICES, LTD, And DOES 1-10 Inclusive

                 Defendants

### DEFENDANTS THYSSEN MINING CONSTRUCTION OF CANADA, LTD. and MUDJATIK THYSSEN MINING JOINT VENTURE'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

**COMES NOW,** Defendants Thyssen Mining Construction of Canada, Ltd. and Mudjatik Thyssen Mining Joint Venture (hereinafter collectively referred to as "MTM"), by and through their attorneys of record, Madison, Harbour & Mroz, P.A. (Ada B. Priest and Jennifer L. Collins) and hereby move this Court pursuant to Rules 12(b) (2) and 12(b) (3) of the New Mexico Rules of Civil Procedure for an Order dismissing Plaintiffs' lawsuit against MTM. As grounds for this motion, MTM states as follows:

### I. INTRODUCTION

This lawsuit arises out of a mining project whose operations were undertaken in Northern Saskatchewan, Canada. *See* Plaintiffs' Second Amended Complaint at para. 8. On October 22, 2006, during an excavation of the mine, a portion of the mine tunnel collapsed causing the mine to flood. Plaintiffs claim damages for loss of certain equipment as a result of the flooding. Plaintiffs herein are the subrogees of Boart Longyear, Inc., the entity


EXHIBIT
G

responsible for the supply of equipment for the mining operation.   Plaintiffs allege $3,766,000 in losses as a result of the incident alleged in the Second Amended Complaint. *Id.* at para. 13.

On or about July 20th, 2009 a Statement of Claim was filed in the Queen's Bench Judicial Center of Regina in Canada by the same Plaintiffs herein asserting claims and damages as a result of the same incident which forms the basis of the instant action.   On February 8, 2010 an Amended Statement of Claim was filed in Canada and remains pending.   A copy of the Amended Statement of Claim is attached hereto as **Exh. A** for the Court's edification.   There is no question the incident that forms the basis of *both* lawsuits occurred in Northern Saskatchewan, Canada. There is no also no question the parties in interest are Canadian businesses who were engaged in business in Canada, or in the Plaintiffs' case, foreign corporations with their principal place of business outside of New Mexico.   *Id.* at paras. 1, 3-5 and Plaintiffs' Second Amended Complaint at paras. 1-2.

Plaintiffs are seeking New Mexico's jurisdiction based on their claim "Thyssen Mining Construction of Canada, Ltd. is registered in New Mexico as a foreign corporation for the purpose of underground mining... [and] [a]t all times relevant...was doing business with the Chevron Mining, Inc. Questa Mine in Questa, Taos County, New Mexico." *See* Second Amended Complaint a para. 4.   The fact is, the incident giving rise to this litigation is completely unrelated to Thyssen's mining operations in Questa, New Mexico and Plaintiffs do not allege otherwise.   These allegations are not sufficient minimum contacts to bring Thyssen Mining Construction of Canada, Ltd. ("Thyssen") within New Mexico's long arm statute and subject it to this state's jurisdiction. Likewise, with respect to Mudjatik Thyssen Mining Joint Venture, there are not any allegations or assertions this party conducted any

activity in New Mexico or had **any** contact with this forum and as such, personal jurisdiction may not be asserted.

In addition to the lack of personal jurisdiction on behalf of MTM, an alternative basis for dismissal is warranted pursuant to Section 38-3-1(F) which precludes the advancement of this litigation in this forum. The Plaintiffs in this matter are admittedly foreign corporations with their principle places of businesses in states other than New Mexico. Since Plaintiffs are presumably relying upon activity by Thyssen Mining Construction of Canada, Ltd. in New Mexico as their basis for jurisdiction, the applicable statute dictates venue is proper, for our purposes, only in the county where the statutory agent designated by the foreign corporation resides. *Id.* As such, venue is not proper and this action should be dismissed. For all of these reasons and the reasons that follow, dismissal is warranted.

### II. ARGUMENT: LACK OF PERSONAL JURISDICTION

New Mexico courts may only exercise jurisdiction over an out-of-state defendant if the defendant is subject to jurisdiction under New Mexico's long-arm statute and sufficient minimum contacts exist so that exercise of jurisdiction does not offend due process. *Int'l Shoe Co. v. Wash., 326 U.S. 310 (1945); Martin v. First Interstate Bank of California,* 914 F.Supp. 473, 475 (D.N.M. 1995); *Jones v. 3M Co.,* 107 F.R.D. 202, 205 (1984); *Visarraga v. Gates Rubber Co.,* 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct. App. 1989). New Mexico's long-arm statute provides, in pertinent part:

38-1-16. Personal service of process outside state

A.   Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action **arising from**:

(1)   the transaction of any business within this state;

3

*\*\*\**

    (2)    the commission of a tortious act within this state;

*\*\*\**

C.    ***Only*** causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

D.    Nothing contained in this section limits or affects the right to serve any process in any other manner now or hereafter provided by law.

Section 38-1-16 NMSA 1998 (1978) (emphasis added). Long-arm statutes are in derogation of the common law; hence, they are strictly construed. *Worland v. Worland,* 89 N.M. 291, 295, 551 P.2d 981, 985 (1976). New Mexico's long-arm statute is designed to ensure a close nexus between a nonresident defendant's jurisdictional activities and the cause of action against which it must defend. *Martin,* 914 F.Supp. at 477; *Winward v. Holly Creek Mills, Inc.,* 83 N.M. 469, 493 P.2d 954 (1972).

New Mexico courts use a three-part test to determine whether personal jurisdiction exists over a nonresident defendant: (1) defendant's act must be enumerated in New Mexico's long-arm statute; (2) plaintiff's cause of action must arise from defendant's act; and (3) defendant must have minimum contacts sufficient to satisfy due process." *Martin,* 914 F.Supp. at 475; *Visarraga,* 104 N.M. at 146, 717 P.2d at 599 (Ct. App. 1986). Plaintiff has the burden of proving that the defendant is subject to jurisdiction in New Mexico. *Doe v. Roman Catholic Diocese of Boise, Inc.,* 121 N.M. 738, 742, 918 P.2d 17, 21 (Ct. App. 1996) (citing *Smith v. Halliburton Co.,* 118 N.M. 179, 185, 879 2d 1198, 1204 (Ct. App. 1994)). Therefore, for this Court to exercise jurisdiction over MTM, Plaintiffs must meet their burden of showing that MTM transacted business in New Mexico that gives rise to the instant litigation; committed a tort in New Mexico; or that MTM has minimum contacts with New Mexico sufficient to satisfy due process. As will be demonstrated below, Plaintiff

4

cannot evidence any grounds which bring MTM within the jurisdiction of New Mexico's courts.

### A. Plaintiffs' Cause of Action Does Not Arise From Thyssen's Mining Activities in Questa, New Mexico and Is Not Sufficient to Establish Personal Jurisdiction Under these Facts and Circumstances.

In the Second Amended Complaint Plaintiffs allege that MTM committed a tort in Northern Saskatchewan, Canada, not in New Mexico.  Plaintiffs clearly do not allege that MTM committed a tort in New Mexico or that any tortuous conduct in New Mexico gives rise to their cause of action.  While Plaintiffs are attempting to create the minimum contacts necessary to bring MTM within the jurisdiction of New Mexico's courts by asserting a "business transaction" exists with a non-interested third party, they cannot prove, nor have they alleged that any business activity in New Mexico gives rise to or serves as the basis for this litigation.

In New Mexico, motions to dismiss for lack of personal jurisdiction test both plaintiff's theory of jurisdiction and the facts supporting jurisdiction.  *Doe*, 121 N.M. at 742, 918 P.2d at 21.  In determining jurisdiction, the court must test not only the jurisdictional theory of the complaint but also the facts on which the jurisdiction is predicated.  *Id.*  Under New Mexico law, a plaintiff bears the burden of supporting the jurisdictional allegations after the defendant properly raises jurisdictional questions.  *Id.* (citing *Smith*, 118 N.M. at 185, 879 P.2d at 1204).  In this instance Plaintiffs cannot demonstrate why New Mexico should have jurisdiction over this claim.  Plaintiffs allege that a Canadian corporation and a joint venture created for the express purpose of conducting business in Canada is liable for an alleged tort committed in Northern Canada and should be subject to jurisdiction in New Mexico because of unrelated mining that is being conducted with a non-interested third

5

party in Questa, New Mexico.  This assertion is not sufficient to establish the requisite

minimum contacts and Plaintiffs provide no further justification as to why the Canadian

parties are being sued in New Mexico.  For these and foregoing reasons, dismissal is

mandated.

### B. MTM does not have the requisite minimum contacts for New Mexico to assert jurisdiction over it because MTM did not transact business in New Mexico that "gives rise" to this litigation.

Plaintiff's complaint does not allege that Thyssen Mining Construction of Canada,

Ltd. ("Thyssen Mining") transacted any business in New Mexico that gives rise to this

litigation.  Instead, Plaintiffs are resting jurisdiction on the fact Thyssen Mining was

engaged in mining activities in Questa, New Mexico with Chevron Mining, Inc. at "all times

relevant." *See* Second Amended Complaint at para. 4.  New Mexico case law provides, "the

analysis of whether the [defendant] transacted business . . . within New Mexico merges

with the inquiry regarding whether such activities constitute minimum contacts sufficient

to satisfy due process concerns." *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, para.

8, 132 N.M. 312, 48 P.3d 50.  Due process requires that out-of-state defendants have

"minimum contacts" with the forum state "such that the maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at

316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)) (other citations omitted); *Hunter-*

*Hayes Elevator Co. v. Petroleum Club Inn Co.*, 77 N.M. 92, 94, 419 P.2d 465, 467 (1966).  This

is a case-by-case inquiry. *Hunter-Hayes Elevator Co.*, 77 N.M. at 94, 419 P.2d at 467.

In *Mozdy v. Lopez*, 197 Mich.App. 356, 494 N.W.2d 866 (1992), the court dismissed

the pending action for lack of personal jurisdiction.  In *Mozdy*, a bar located in Canada was

sued after a patron was involved in an automobile accident in Michigan after having

6

become intoxicated at the Canadian bar. *Id.* The plaintiff argued the bar caused a tort to occur in Michigan by serving alcohol to a visibly intoxicated person. *Id.* at 360. The court rejected this argument because the bar's only activity in Michigan was a newspaper advertisement, which the court found had no causal connection to the claimed injury. *Id.* As a result of the lack of causal connection between the advertisement and the injury, the court noted the cause of action did not arise from the bar's activities in Michigan and thus, did not satisfy jurisdictional requirements. *Id.* at 361. Likewise in the instant action, there is no evidence, nor even any allegation the mining activities by Thyssen in Questa, New Mexico had any causal connection to the alleged damages sustained in Canada. With respect to Mudjatik Thyssen Mining Joint Venture, there is no evidence nor allegation this entity ever transacted business in New Mexico, committed a tortuous act in New Mexico or had *any* contacts – minimum or otherwise – in this forum that would subject this party to New Mexico's jurisdiction.

Clearly, Plaintiffs' sole contention for purposes of asserting personal jurisdiction is that Thyssen was engaged in mining activities in Questa, New Mexico. There is no dispute this case arises from mining operations in Saskatchewan, Canada. There is no dispute a claim has been filed by the same Plaintiffs and is currently pending in Canada. There is no dispute all interested parties are Canadian businesses who, at all times relevant, were conducting business in Canada. In short, since Thyssen does not have sufficient minimum contacts with New Mexico and Mudjatik Thyssen Mining Joint Venture has no contacts with New Mexico, dismissal should be entered in favor of these parties.

### III.  ARGUMENT:  SECTION 38-3-1 NMSA 2009 (1988) PROVIDES AN ALTERNATIVE BASIS FOR DISMISSAL

Section 38-3-1 of the New Mexico Statutes provides the county in which a civil action in district court may be commenced.  The statute text provides, in pertinent part:

> All civil actions commenced in the district courts shall be brought and shall be commenced in counties as follows and not otherwise:

> F.      Suits may be brought against transient persons or non-residents in any county of this state, except that suits against foreign corporations admitted to do business and which designate and maintain a statutory agent in this state upon whom service of process may be had shall only be brought in the county *where the plaintiff, or any one of them in case there is more than one, resides or in the county where the contract sued on was made or is to be performed or where the cause of action originated or indebtedness sued on was incurred or in the county where the statutory agent designated by the foreign corporation resides.*

*Id.* (Emphasis added).  In this case, Plaintiffs are both foreign corporation with principle places of business in states other than New Mexico.  As such, there is no issue with respect to the "residency" of the plaintiffs.  The cause of action originated in Canada and the defendants are Canadian companies.  For purposes of a New Mexico venue, Plaintiffs tenuous connection rests solely with Thyssen Mining Construction of Canada, Ltd.'s registered agent for service of process, to wit: CT Corporation System located at 123 E. Marcy Street, Santa Fe, New Mexico.  The moving parties contend New Mexico lacks personal jurisdiction and mandates dismissal of this matter.  Notwithstanding, the moving parties claim as a minimum, venue in the Eighth Judicial District is inappropriate and at odds with the statutory provision outlined above and dismissal is mandated.

### IV. CONCLUSION

This Court should dismiss this lawsuit for lack of personal jurisdiction because Plaintiffs cannot meet their burden of establishing any business activity by Thyssen Mining

8

Construction of Canada, Ltd. gave rise to the instant litigation, that any tortious conduct took place in New Mexico or that the requisite minimum contacts with New Mexico exist that would subject MTM to jurisdiction in New Mexico. In addition, dismissal is warranted because venue in the Eighth Judicial District does not fall within the parameters provided for in Section 38-3-1 NMSA 2009 (1988). Judicial notions of fair play and substantial justice are not served by allowing this litigation to proceed in New Mexico or, alternatively, in this particular venue.

WHEREFORE, for the reasons outlined above, Defendants Thyssen Mining Construction of Canada, Ltd. and Mudjatik Thyssen Mining Joint Venture seek an Order dismissing this cause of action against them on the grounds this Court does not have personal jurisdiction and for any other relief that this court deems just and proper.

MADISON, HARBOUR & MROZ, P.A.

Ada B. Priest
Jennifer L. Collins
201 Third Street N.W., Suite 1600
Albuquerque, New Mexico 87102
505.242.2177/505.242.7184 (F)
*Attorneys for Thyssen Mining Construction
of Canada, Ltd. and Mudjatik Thyssen
Mining Joint Venture*

9

## AMENDED STATEMENT OF CLAIM

Q.B. G No.1087 of 2009.

CANADA                )
PROVINCE OF SASKATCHEWAN    )

### IN THE COURT OF QUEEN'S BENCH
### JUDICIAL CENTER OF REGINA

BETWEEN

**BOART LONGYEAR INC.**

**PLAINTIFF**

-and-

**MUDJATIK ENTERPRISES INC., THYSSEN MINING
CONSTRUCTION OF CANADA LTD., MUDJATIK THYSSEN
CIGAR LAKE JOINT VENTURE and
COMINCO ENGINEERING SERVICES LTD.**

**DEFENDANTS**

QUEEN'S BENCH
JUDICIAL CENTRE of REGINA

FEB 0 8 2010

FILED

### NOTICE TO DEFENDANT

1. The plaintiff may enter judgment in accordance with this Statement of Claim or such judgment as may be granted pursuant to the Rules of Court unless

   within 20 days if you were served in Saskatchewan;
   within 30 days if you were served elsewhere in Canada or in the United States of America;
   within 40 days if you were served outside Canada and the United States of America

   (excluding the day of service) you serve a Statement of Defence on the plaintiff and file a copy thereof in the office of the local registrar of the Court for the judicial centre above-named.

2. In many cases a defendant may have the trial of the action held at a judicial centre other than the one at which the Statement of Claim is issued. Every defendant should consult his lawyer as to his rights.

3. This Statement of Claim is to be served within six months from the date on which it is issued.

4. This Statement of Claim is issued at the above-named judicial centre the 20th day of July 2009.

(L.S.)                          "T. LANGFORD"
                          _____
                              *Local Registrar*

This Claim amended pursuant to Rule 166 of The Queen's Bench Rules, without consent.



EXHIBIT

tobbles

*A*

## AMENDED STATEMENT OF CLAIM

**I.    THE PARTIES**

1.     The plaintiff, Boart Longyear Inc. ("BOART"), is a corporation formed pursuant to the *Canada Business Corporations Act* which carries on business in Saskatchewan and elsewhere in Canada as a designer and manufacturer of custom-made drilling equipment for industrial mining projects.

2.     The defendant, Mudjatik Enterprises Inc. ("MUDJATIK") is a Business Corporation formed pursuant to the laws of Saskatchewan which carries on business in Saskatchewan as a mining contractor. MUDJATIK's registered head office is located at 2553 Grasswood Road East, Saskatoon, Saskatchewan S7T 1C8.

3.     The defendant, Thyssen Mining Construction of Canada Ltd. ("THYSSEN") is a Business Corporation formed pursuant to the laws of Saskatchewan which carries on business as a mining contractor in the western U.S.A. and Canada. THYSSEN's registered head office is located at 2409 Albert Street North, Regina, Saskatchewan, S4P 3B1.

4.     THYSSEN has partnered with MUDJATIK in a joint venture referred to as Mudjatik Thyssen Cigar Lake Joint Venture. THYSSEN is the sponsor and managing partner of the joint venture. The joint venture was created to undertake mining contracting work in Northern Saskatchewan. THYSSEN, MUDJATIK and their joint venture are hereinafter referred to collectively as "MTM".

5.     The defendant, Cominco Engineering Services Ltd. ("COMINCO") is a corporation formed pursuant to the *Canada Business Corporations Act* which carries on business in Saskatchewan and elsewhere in Canada as a provider of mining engineering services. COMINCO's registered head office is located at 200 Burrard Street, Suite 600, Vancouver, British Columbia V6C 3L9.

## II.    BACKGROUND

6.      In or around November of 2004, BOART was contracted by Cameco Corporation ("CAMECO") to provide drilling equipment and skilled labour at a uranium mine, the "Cigar Lake Mine", located at the south end of Waterbury lake, approximately 660 kilometers north of Saskatoon, in Northern Saskatchewan (the "MINE" or "MINING PROJECT").

7.      The MINING PROJECT was at all material times a joint venture owned by CAMECO, AREVA Resources Canada Inc., Indemnitsu Uranium Exploration Canada Ltd. and TEPCO Resources Inc. The MINING PROJECT involved the construction, mining operation and eventual decommissioning of a commercial-scale uranium mine with an anticipated 40-year mine life, and with production expected to begin in 2008.

8.      CAMECO assumed operating responsibility for the Mine in or around 2002, prior to which the Mine was undergoing a test mining program under the ownership of a separate company, the Cigar Lake Mining Corporation ("CLMC") since around 1985.

9.      The uranium ore deposit at the MINE lies at a depth of 400 to 500 meters, between an upper layer of Athabasca sandstone (which is porous and allows water to percolate, forming underground aquifers), and a more stable layer of 'basement rock'. The uranium deposit is a thin, flat-lying pod shape, approximately 2,000 metres long, 20-100 metres wide, and up to 16 meters thick. Because the sandstone is unstable, the majority of mine tunnels cannot be drilled through the sandstone. Mining is instead done away from the uranium ore body, by drilling a vertical shaft into the ground, through the sandstone and into the basement rock. Horizontal tunnels are then drilled across through this basement rock *under* the uranium ore body. Pilot holes are then drilled up into the ore body so that uranium can be extracted.

10.     Because of the presence of water in the Athabasca sandstone, there is a risk of flooding at the MINE. When the MINE had been operated by CLMC as a test mine in the 1980's and 1990's, de-watering equipment, such as pumps and pond containment, were installed at the Mine.

11.     In or about 1990, CLMC contracted with COMINCO to design, manufacture and install watertight bulkhead doors in the MINE's east and west drift tunnels (the "DOORS"). These DOORS were a critical component of the MINE's operation. At all material times, they were the only major physical control in event that there was a water inflow rate which exceeded the capacity of the de-watering equipment.

12.     Since CAMECO assumed operation of the MINING PROJECT in 2002, the drilling activities at the MINE were categorized into two groups:

      i.)     Excavation of underground tunnels. The MINE tunnels are created through the use of methods which include drilling, blasting, and a mechanical tunneling system. MTM was contracted by CAMECO to carry out this excavation work at the MINE; and

      ii.)    Drilling that relates to uranium ore extraction. BOART was contracted by CAMECO to carry out this ore extraction work, using a process referred to as "freeze drilling". The ore excavation work takes place in the main underground tunnels after they have been excavated by MTM.

13.     With respect to the excavation of underground tunnels to be carried out by MTM, it was agreed and understood by MTM at all material times that:

      (a)     controlled blasting techniques and carefully controlled evacuation approaches would need to be adopted at the MINE, and particularly with respect to excavation of an underground "east drift" tunnel at the 465 metre level owing to, among other things, a known history of poor ground quality and prior problems with flooding;

      (b)     cable bolts should be used in all mine development intersections,

      (c)     ground support in all tunnels were to be installed in a timely manner, but would in any event need to be in place within 72 hours, and

    (d)      special precautions were warranted with respect to excavation of the underground "east drift" tunnel at the 465 metre level.

## III.   THE MINE FLOOD

14.   On October 22, 2006, while MTM employees were in the process of drilling and excavating the east drift tunnel at the 465 metre level, a portion of the tunnel collapsed, accompanied by a large inflow of water that exceeded the capacity of the mine's dewatering equipment. CAMECO's General Manager instructed site personnel to close the DOORS. Although the employees were able to close the East DOOR, the West DOOR could not be sealed. As a result, the entire MINE flooded and had to be sealed.

15.   At the time of the flood, Boart had several pieces of drilling equipment in the mine.

16.   As a result of the MINE flooding, BOART suffered the loss of its drilling equipment and sustained significant business interruption losses. To date, BOART's total losses are currently estimated at $7,000,000.00. The particulars of these losses will be provided during the course of this litigation.

## IV.   LIABILITY OF MTM

17.   The flooding of the MINE and the resulting losses sustained by BOART were caused by the negligence and breach of duty of MTM, particulars of which include, but are not limited to, the following:

    (a)      MTM failed to provide adequate manpower to ensure that it could carry out its contractual obligations at the MINE in a safe and timely manner;

    (b)      MTM failed to properly allocate its resources and schedule its activities at the MINE in a manner which would give priority to the safety of persons and property at the MINE;

(c)    MTM failed to carry out its construction work at the mine with due care and in a good, safe and workmanlike manner, and failed to ensure the same with respect to others who were involved in the construction work;

(d)    MTM failed to implement adequate precautions with respect to the east drift at the 465 meter level, and failed to ensure the same with respect to others who were involved in the development of precautions for the east drift;

(e)    MTM failed to implement formal, or any, contingency plans in the event of a water inflow emergency at the MINE and failed to ensure the same with respect to others who were involved in the implementation of contingency plans with respect to water inflow emergencies;

(f)    MTM failed to identify detailed risk scenarios or ensure that necessary controls were in place to prevent flooding prior to beginning excavation of the east drift at the 465 meter level;

(g)    MTM failed to identify detailed risk scenarios or ensure that necessary controls were in place to prevent flooding after beginning excavation of the east drift at the 465 meter level, notwithstanding indicators that such controls were necessary;

(h)    MTM failed to ensure that ground supports were in place in a safe and timely manner;

(i)    MTM failed to install ground supports within 72 hours as expressly required by CAMECO;

(j)    MTM failed to ensure that cable bolts, or equivalent ground control mechanisms, were used in all development intersections at Mine;

(k)     MTM failed to install adequate and safe ground support in a reasonable and timely manner;

(l)     MTM failed to use appropriate drilling techniques to excavate the east drift tunnel, having regard to all relevant circumstances;

(m)     MTM failed to use controlled blasting techniques to excavate the east drift tunnel;

(n)     MTM failed to adhere to design specifications with respect to excavation of the east drift tunnel, and excavated significantly larger spans of tunnel than were called for by engineering plans;

(o)     MTM failed to maintain its equipment in a good and workmanlike manner;

(p)     MTM failed to ensure that detailed geological mapping had been implemented prior to beginning excavation of the east drift tunnel, failed to ensure that adequate emergency water treatment and pumping systems were in place prior to starting construction on the east drift;

(q)     MTM failed to close the West DOOR in dry conditions as specified by the DOOR design specifications, and thereafter forced the DOOR open numerous times;

(r)     MTM failed to respond to the water inflow event at the MINE in a reasonable, safe and timely manner; and

(s)     MTM employed incompetent employees, agents, servants and contractors who lacked adequate knowledge and training.

(t)     MTM failed to warn BOART, or anyone, of the increased risks created by the provision of its mining contracting services;

18.     As a result, it was foreseeable to MTM that a flood could occur at the MINE which could result in damage and consequential losses to other contractors at the MINE, including BOART.

19.     Additionally, MTM knew, or should have known, about the unreasonable risk of flooding created by the provision of its mining contracting services, and in particular, by the excavation of the east drift, having regard to:

    (a)     findings, opinions, conclusions, reports and discussion with CAMECO's audit committees and mine engineering teams;

    (b)     findings, opinions, conclusions and reports of other experts and consultants who assessed safety issues at the MINE, including but not limited to TapRooT® reports and a report issued on or around March of 2002 documenting a geotechnical review conducted by Golder Associates; and

    (c)     prior flooding events at the MINE, including but not limited to water inflow events on or around October 1, 1999 and April 5, 2006.

20.     As a result of the foregoing, BOART pleads that MTM is fully liable for its losses.

## V.     LIABILITY OF COMINCO

21.     The DOORS which had been designed, manufactured and installed by COMINCO were dangerous and defective products that were not of merchantable quality, nor were they fit for their purpose as a major physical control to prevent water inflow into the MINE in the event of an emergency flooding. In particular:

    (a)     The DOORS were very difficult to move, and the weight of the DOORS made them very difficult to square by hand when they were being closed;

(b)    The DOORS would not seal effectively unless they were reasonably aligned, but they did not contain a mechanism, other than manual manipulation, for doing so;

(c)    The DOORS' gaskets, which were intended to form a watertight seal when the DOORS were closed, were prone to failure and prone to become detached; and

(d)    Notwithstanding that the DOORS were intended to prevent flooding of the MINE, the DOORS were intended to be closed in water-free environment. The DOORS' design was defective in that, among other things, electrical power to water pumps located behind the door needed to be disconnected before the DOORS could be closed. Thus, there was no means of keeping water levels down once water reached the DOORS.

22.    The flooding of the MINE and the resulting losses sustained by BOART were caused by the negligence and breach of duty of COMINCO, particulars of which include, but are not limited to, the following:

(a)    COMINCO failed to design, manufacture and install the DOORS in a good and workmanlike manner, and failed to ensure the same with respect to others who were involved in the design, manufacture and installation of the DOORS;

(b)    COMINCO failed to design, manufacture and install DOORS that were safe, fit for their purpose, of merchantable quality and free of design defects;

(c)    COMINCO failed to provide appropriate warnings, instructions and training with respect to the use and operation of the DOORS.

Accordingly, BOART pleads that MTM is fully liable for its losses.

## VI.   DAMAGES

23.     As a result of the foregoing breaches of the legal obligations owed by the defendants, BOART pleads that the defendants are jointly and severally liable to it for all damages sustained as a result of the MINE flooding, including damage to property, loss of profits, and business interruption losses, all of which are currently estimated to be in excess of $7,000,000.00, particulars of which will be provided during the course of litigation.

24.     BOART pleads and relies upon the *Contributory Negligence Act*, R.S.S. 1978, c. C-31.

WHEREFORE, THE PLAINTIFF THEREFORE CLAIMS AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY:

(a)     Damages in the amount of $7,000,000.00 CAD;

(b)     Pre-judgment interest pursuant to the *Pre-Judgment Interest Act*; S.S. 1984-85-86, c. P-22.2;

(c)     Costs of this action, inclusive of G.S.T., and

(d)     Such further and other relief as this Honourable Court may deem just.

DATED at REGINA, SASKATCHEWAN, this 20th day of July, 2009.

McDOUGALL GAULEY LLP

"Gordon J. Kuski"

Gordon J. Kuski, Q.C.
Solicitors for the Plaintiff,
Boart Longyear Inc.

This Amended Statement of Claim dated at Regina, Saskatchewan, this 8th day of February, 2010.

McDOUGALL GAULEY LLP

Gordon J. Kuski, Q.C.
Solicitors for the Plaintiff,
Boart Longyear Inc.

This document was delivered by:

McDOUGALL GAULEY LLP
Barristers and Solicitors
1500-1881 Scarth Street
Regina, Saskatchewan   S4P 4K9

Address for service: as above

Lawyer in charge of file: Gordon J. Kuski, Q.C.
Telephone:    306-565-5111
Facsimile:     306-359-0785
Email address: gkuski@mcdougallgauley.com

Agent for:
COZEN O'CONNOR
One Queen Street East, Suite 1920
Toronto, Ontario  M5C 2W5

Lawyer in charge of file:
Rai K. Datt
Telephone: (416) 361-3200
Fax: (416) 361-3200
E-mail address: rdatt@cozen.com

♨JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
FIREMAN'S FUND INSURANCE COMPANY and ZURICH INSURANCE COMPANY, LTD (as Subrogees to BOART LONGYEAR, Inc.

**DEFENDANTS**
THYSSEN MINING CONSTRUCTION OF CANADA, LTD., MUDJATIK THYSSEN MINING JOINT VENTURE, COMINICO ENGINEERING SERVICES, LTD. and DOES 1-10 INCLUSIVE,

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Harvey Fruman, Cozen O'Connor, 125 Lincoln Ave., Ste. 400, Santa Fe, NM 87501

Attorneys (If Known)
Ada B. Priest, Jennifer L. Collins, Madison, Harbour & Mroz, P.A., 201 Third St. NW, Ste. 1600, Albuquerque NM 87102

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Section 1332, and/or 1367

Brief description of cause:
Complaint for negligence

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 3,766,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____   DOCKET NUMBER _____

DATE 4/23/10

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____